# In the United States Court of Federal Claims

No. 17-854C
(Filed: October 1, 2019)

|  |  |  |
|---|---|---|
| **PACIFIC COAST COMMUNITY SERVICES, INC.,** | ) ) ) ) | |
| *Plaintiff,* | ) ) | Keywords:  Summary Judgment; Contract Interpretation; Ambiguity; Proof of Damages |
| v. | ) ) ) | |
| **UNITED STATES,** | ) ) ) | |
| *Defendant.* | ) ) | |

*Joseph A. Whitcomb*, Whitcomb, Selinsky, PC, Denver, Colorado, for Plaintiff, with whom was *LaQunya L. Baker*, of counsel, Whitcomb, Selinsky, PC, Denver, Colorado, of counsel.

*Alison S. Vicks*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for Defendant, with whom was *Denise A. McLane*, Department of Homeland Security, Washington, D.C., of counsel.

**MEMORANDUM OPINION AND ORDER**

***HERTLING*, Judge**

      Plaintiff Pacific Coast Community Services, Inc. ("Pacific Coast") alleges that the defendant breached the contract between the parties by requiring Pacific Coast to perform 2,000 productive hours of work per full-time-equivalent ("FTE") employee per year and provide replacement employees for all absent employees.  Pacific Coast alleges that the contract actually required only 1,888 productive hours per FTE per year and does not require replacement for employee absences of less than two consecutive weeks.  Following discovery, the parties cross-moved for summary judgment, with the defendant arguing that Pacific Coast failed to prove any damages associated with breach.

      The Court agrees with Pacific Coast that the contract did not require replacement of employees absent for less than two weeks and only required 1,888 hours per FTE per year.  Pacific Coast's Motion for Summary Judgment is therefore granted in part.  The Court agrees with the defendant, however, that Pacific Coast cannot prove any harm, and therefore, the defendant's Motion for Summary Judgment is also granted in part.  The Court awards no damages or restitution and enters judgment for the defendant.

I.  **BACKGROUND**

  A.  **Relevant Factual Background**

  1.  **Solicitation and Award**

The Federal Protective Service ("FPS") issued Solicitation No. HSHQW9-12-R-00003 (the "Solicitation") in August 2012 for commercial administrative support services in Los Angeles and San Francisco, with a period of performance of one base year and four one-year option periods.  The Solicitation required the offeror to provide five FTE employees for four Contract Line Item Numbers ("CLINs").  Specifically, CLIN 001 provided one position in Admin Support/Payroll Tech; CLIN 002 provided one position in Admin Support/Payroll Tech, Threat Management Branch; CLIN 003 provided one position in Admin Support/Payroll Tech/Property Admin; and CLIN 004 provided two positions in "Budget Contract Guard/SWA Budget Analyst" at the Mission Support Branch.

The Solicitation incorporated by reference FAR 52.212-4, Contract Terms and Conditions-Commercial Items.  Among its provisions, the changes clause provides that "[c]hanges in the terms and conditions of this contract may be made only by written agreement of the parties."  FAR 52.212-4(c).

The Solicitation included a Department of Labor Wage Determination, which was binding under the Service Contract Act, 41 U.S.C. § 351 *et seq.*  The Wage Determination set forth the minimum wages for the position(s) in each CLIN, and the requirements for annual vacation and fringe benefits.  The amount of mandatory annual vacation ranged from two to four weeks, depending on the employee's seniority.

The Solicitation contemplated award of a firm fixed-price contract charged at a monthly rate for each of the four CLINs and incorporated a "Proposal Pricing Worksheet" on which offerors were to provide the hourly rate, monthly rate, and total price by CLIN.[1]  The hourly and monthly rates were calculated from employees' productive hours.  The Solicitation provided that "[t]he contractor shall not invoice for unproductive time such as the lunch period."  The Solicitation set work hours as 8:00 AM to 5:00 PM Monday through Friday (except for federal holidays) with a one-hour daily lunch break, amounting to 2,000 potential productive hours per year.[2]

The Proposal Pricing Worksheet recognized that, with no vacation days, each employee should have 2,000 productive hours per year, but it instructed offerors that "productive hours are taken from 'Employees' worksheet (Cell C9)."  The Employees worksheet, in turn, required the offeror to provide its employees' names and the number of weeks of vacation allocated to each

---

[1] The Solicitation contemplated a monthly rate calculated by the result of each contractor employee's hourly rate times the number of productive hours, divided by the result of twelve months times two full time equivalents, or (Employee's Hourly Rate x Number of Productive Hours) / (12 Months x 2 FTEs).

[2] The Contract was later modified to work hours of 8:00 AM to 4:30 PM with a 30-minute lunch break.

employee, per the Wage Determination. The Worksheet also provided the following formula to calculate productive hours:



The parties do not dispute that this formula reflected an automatic Excel calculation such that when an offeror entered hours in the Vacations row, the Total Productive Hours decreased by the same amount.

The Solicitation also required the contractor to notify FPS at least four weeks in advance of any contractor employee's absence "that is greater than 2 weeks in duration[,]" and in such cases required that the contractor must "immediately locate a replacement" and ensure that the replacement "will be able to perform the duties required of the position." The Solicitation contained no similar notification or replacement requirement for employee absences of less than two weeks.

Pacific Coast submitted a proposal, which included its Proposal Pricing Worksheet. The Worksheet listed 1,888 productive hours per FTE per year, and listed four of its employees as entitled to three weeks of annual vacation, and one employee as entitled to two weeks of annual vacation.

FPS awarded the contract to Pacific Coast in September 2012 (hereinafter the "Contract"), and Pacific Coast began performance in October 2012.

2. **Contract Performance**

In June 2013, eight months after performance began, FPS assigned a new Contracting Officer ("CO") to the Contract. The new CO began requiring Pacific Coast to perform 2,000 productive hours with 100 percent replacement of any absent employees, no matter how short the duration of their absence.

FPS awarded Pacific Coast the first option year in 2013 for a second year of performance.

In the first option year, FPS evaluated Pacific Coast's performance as "marginal" through the Contractor Performance Assessment Report System ("CPARS") but still recommended Pacific Coast "for similar requirements in the future." The Contractor Performance Assessment Report ("CPAR") explained that Pacific Coast's "marginal" rating was due to repeated absences of Pacific Coast personnel and failure by the contractor to notify FPS when its employees would be absent "for *any period of time*." Compl. Ex. 13 (emphasis added). Pacific Coast's comments in response, incorporated into the CPAR, explained that the employee had taken Family Medical Leave Act ("FMLA") leave, and "some of the underlying issues continued to affect the employee's work attendance." *Id.* Pacific Coast's comments noted that the employee's attendance improved following counseling, but also admitted that Pacific Coast should have counseled the employee sooner than it did. *Id.*

Despite the "marginal" CPARS rating, FPS awarded Pacific Coast the second option year in 2014.[3] Approximately six months later, in April 2015, FPS sent Pacific Coast a letter expressing its "continuing concern with [Pacific Coast's] lack of understanding of the terms and conditions of the subject contract and specifically the" Performance Work Statement ("PWS"). The letter reminded Pacific Coast of the contractual requirements, and that the CLINS "are very specific as to the number of FTE's [*sic*] required. If you are not able to fulfill the requirement, then the Government expects an adjustment for services NOT performed."

In late July 2015, Pacific Coast submitted a written demand to the CO regarding the deliverable hours.[4] Pacific Coast claimed damages "from $5,000 to $25,000 per contract year or to $200,000 if the disputed contract is terminated by the Government." The CO denied this demand, and Pacific Coast appealed to the Civilian Board of Contract Appeals ("CBCA") in November 2015.[5] The CBCA denied the claim two months later because it was not for a sum certain.

Despite the CO's letter, in 2015 FPS awarded the third option year to Pacific Coast, for a fourth year of performance. In January 2016, FPS provided Pacific Coast with an updated CPAR, again rating Pacific Coast's performance as "marginal." The rating stemmed from FPS's continued concern over Pacific Coast's understanding of the PWS and its failure to provide adequate staffing.

In May 2016, nearly a year after its first demand, Pacific Coast submitted a certified claim to the CO, disputing the required hours under the contract and requesting payment of

---

[3] In that third year of performance, FPS modified the Contract at no cost to require more coordination between the Agency and the Pacific Coast payroll technicians and administrative support. *See* Compl. Ex. 3, Modification P000015. This modification changed the duties of the position Pacific Coast calls the "Regional Receptionist." Count Four of Pacific Coast's complaint, related to the "Regional Receptionist," was dismissed with prejudice by joint motion. (ECF 53; ECF 54.)

[4] This demand also challenged the alleged change in the scope of work for the Regional Receptionist.

[5] The CBCA has jurisdiction, concurrent with this court, to hear disputes between contractors and civilian executive agencies under the Contract Disputes Act.

$257,300.[6] Pacific Coast alleged that FPS's interpretation of the Contract as requiring 2,000 hours per FTE per year would force Pacific Coast to hire and train multiple additional staff members, resulting in an additional 250 hours per year, bringing the productive hours up to 2,138 hours per year.

The CO partially denied the claim as to the additional 250 hours per year, but offered a $118,468 settlement to Pacific Coast for the difference between the 1,888 hours per year that Pacific Coast bid, and the 2,000 hours per year that FPS argued the contract required. Pacific Coast declined the settlement offer.

### B. Relevant Procedural Background

FPS moved to dismiss Pacific Coast's complaint, arguing both that Pacific Coast failed to state a claim, and that the Court lacked jurisdiction over the case. Senior Judge Damich dismissed counts two and five of Pacific Coast's complaint for lack of jurisdiction but denied FPS's Motion to Dismiss as to Counts one, three, and four. (ECF 21)

FPS answered Pacific Coast's complaint, and the parties conducted discovery. During discovery, FPS requested Pacific Coast's

> payroll data by CLIN for each month of contract performance, including each employee's paid hours, wages, and health and welfare charges; each employee's paid time off hours, wages, and health and welfare charges by month for vacation, holiday, sick leave, other leave, or training; and payroll data by CLIN for hours worked and paid by fill-in staff when an employee was on vacation, holiday, sick leave, other leave, or in training, and when such fill in hours were worked, for each month of contract performance, and such data when a regular employee worked overtime to fill in for an off-duty employee.

Def. Cross-Mot. (ECF 40) at 11. FPS claims that Pacific Coast "admitted that it could not provide the data requested" and refused to provide information on how it calculated its fully-burdened labor rates for each CLIN.

After the parties completed discovery, Pacific Coast moved for summary judgment. (ECF 39.) FPS responded with its own cross-motion for summary judgment. (ECF 40.) The case was then transferred to this judge. The parties thereafter jointly moved to dismiss with prejudice Counts Three and Four of Pacific Coast's complaint voluntarily. (ECF 53.) The Court granted that motion. (ECF 54.)

The cross-motions for summary judgment are now fully briefed.

## II. JURSIDICTION AND STANDARD OF REVIEW

The Tucker Act grants this Court jurisdiction to adjudicate Pacific Coast's claim because it arises under, and satisfies the requirements of, the Contract Disputes Act ("CDA"), 41 U.S.C.

---

[6] Pacific Coast also alleged that the modified scope of the work for the Regional Receptionist required both a higher employee classification and wage rate.

§ 7101 *et seq*. *See* 28 U.S.C. § 1491(a)(2).  Pacific Coast's claim meets the CDA's threshold requirement of being an "express . . . contract . . . made by an executive agency for . . . the procurement of services."  41 U.S.C. § 7102(a)(2).  Pacific Coast's claim also meets the CDA's requirement that a claim be submitted to and receive a final decision by the CO on the same operative facts and legal theory, stating a sum certain.  *See, e.g.*, *K-Con Bldg. Sys., Inc. v. United States*, 778 F.3d 1000, 1005 (Fed. Cir. 2015).

A grant of summary judgment is appropriate if the pleadings, affidavits, and evidentiary materials filed in a case reveal that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a) of the Rules of the Court of Federal Claims ("RCFC").  A material fact is one "that might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine dispute exists when the finder of fact may reasonably resolve the dispute in favor of either party.  *Id.* at 250.

The moving party bears the burden of demonstrating the absence of any genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "'[T]he inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (alteration in original) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).  To establish "that a fact cannot be or is genuinely disputed," a party must "cite[ ] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials."  RCFC 56(c)(1)(A).  If the record taken as a whole "could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and a grant of summary judgment is appropriate.  *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)).

The same standard applies when the parties have cross-moved for summary judgment. *See Marriott Int'l Resorts, L.P. v. United States*, 586 F.3d 962, 968-69 (Fed. Cir. 2009).  The Court is not obligated to grant summary judgment for either side; "[r]ather, the court must evaluate each motion on its own merits[.]"  *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987).  If a genuine issue of material fact exists, the Court must deny both motions.  *Marriott*, 586 F.3d at 969.

### III. DISCUSSION

This case is, at its core, a dispute over contract terms.  The parties disagree as to whether the Contract at issue required 1,888 productive hours per FTE per year, or 2,000.  For Pacific Coast to prevail on its claim that the contract required only 1,888 productive hours per FTE per year, however, Pacific Coast must also offer proof that it was harmed.

Pacific Coast argues that the Agency breached the contract by requiring 2,000 productive hours and coverage for absent employees.  As a threshold matter, Pacific Coast's breach of contract argument must fail.  The Federal Circuit has held that a breach of contract can occur when an agency makes "[d]rastic modifications or fundamental alterations . . . beyond the scope of the contract[.]"  *NavCom Def. Elecs., Inc. v. England*, 53 F. App'x 897, 900 (Fed. Cir. 2002)

(citing *Embassy Moving & Storage Co. v. United States*, 191 Ct. Cl. 537, 424 F.2d 602, 606-07 (1970)).  Pacific Coast alleges no such drastic change.

Pacific Coast separately alleges that the Agency's different interpretation of the productive-hours requirement constituted a constructive change.  Pacific Coast argues that FPS forced Pacific Coast to accept a constructive change, when the new CO assumed administration of the Contract.  This claim requires the plaintiff to show that it performed work beyond the contract requirements, and that the additional work was ordered by the government.  *Bell/Heery v. United States*, 739 F.3d 1324, 1335 (Fed. Cir. 2014) (citing *The Redland Co. v. United States*, 97 Fed. Cl. 736, 755-56 (2011)).  "To demonstrate a constructive change for disputes over the contract requirements, the contractor must show the performance of work in addition to or different from that required under the contract (the change component), either by express or implied direction of the Government or by Government fault (the order/fault component)." *Miller Elevator Co. v. United States*, 30 Fed. Cl. 662, 678–79, *dismissed on appeal*, 36 F.3d 1111 (Fed. Cir. 1994).

To determine whether a breach of contract or a constructive change occurred, the Court must look to the contract language.  *Bell/Heery*, 739 F.3d at 1331, 1335.  Contract interpretation is a legal issue that is "'generally amenable to summary judgment.'"  *Premier Office Complex of Parma, LLC v. United States*, 916 F.3d 1006, 1011 (Fed. Cir. 2019) (quoting *Varilease Tech. Grp., Inc. v. United States*, 289 F.3d 795, 798 (Fed. Cir. 2002)).  "Whether a contract provision is ambiguous is also a question of law."  *Id.* (citing *NVT Techs., Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004)).

### A. The Contract Required 1888 Hours Per FTE Per Year

Pacific Coast argues that the Contract provides for an average of 1,888 productive hours per FTE per year, and requires vacation time consistent with the Wage Determination incorporated therein.  The Contract, Pacific Coast argues, limits the absence notification and absent-employee replacement requirement to situations in which an employee will be absent (for whatever reason) for two consecutive weeks or longer.  By requiring it to provide 2,000 productive hours per FTE per year, Pacific Coast argues that FPS unilaterally changed the terms of the Contract.

FPS argues that the Contract required 2,000 productive hours per FTE per year, and required the contractor to cover absences with replacement employees, no matter how short the duration of the absence, claiming that the Contract does not limit the notification and replacement requirement to employee absences longer than two weeks.

This Court analyzes disputed contract provisions by first determining whether the provisions are ambiguous, that is, subject to more than one reasonable interpretation.  *See McAbee Const., Inc. v. United States*, 97 F.3d 1431, 1434-35 (Fed. Cir. 1996).  This analysis begins with and relies on the plain language of the contract, reviewing it "as a whole" and interpreting its provisions to "harmonize and give reasonable meaning to all parts." *Foley Co. v. United States*, 11 F.3d 1032, 1034 (Fed. Cir. 1994); *NVT Techs.*, 370 F.3d at 1159.  "When a contract term is susceptible to more than one reasonable interpretation, it is ambiguous." *HPI/GSA 3C, LLC v. Perry*, 364 F.3d 1327, 1334 (Fed. Cir. 2004) (citing *Jowett, Inc. v. United*

*States*, 234 F.3d 1365, 1368 (Fed. Cir. 2000)).  The Court may use extrinsic evidence to interpret an ambiguous contract.  *Metro. Area Transit, Inc. v. Nicholson*, 463 F.3d 1256, 1260 (Fed. Cir. 2006).

When a contract is determined to be ambiguous, the Court must then determine whether the ambiguity is patent or latent.  *NVT Techs.*, 370 F.3d at 1162.  "The doctrine of patent ambiguity is an exception to the general rule of *contra proferentem* which construes an ambiguity against the drafter[.]"  *Metric Constructors, Inc. v. Nat'l Aeronautics & Space Admin.*, 169 F.3d 747, 751 (Fed. Cir. 1999).  "An ambiguity is patent if 'so glaring as to raise a duty to inquire.'"  *Id.* (quoting *Newsom v. United States*, 230 Ct. Cl. 301, 303 (1982)).

Here, the Contract is latently ambiguous as to the number of productive hours required and whether the contractor must provide replacement workers when an FTE will be absent for less than two consecutive weeks.  The plain language of the Contract supports Pacific Coast's interpretation because it requires Pacific Coast to provide between two and four weeks of vacation to each of its employees, in accordance with the binding Wage Determination.  The Proposal Pricing Worksheet incorporates the Wage Determination-required vacation and uses a formula to find the average number of employee vacation hours per year.  The Contract contains no express requirement to replace employees absent for less than two weeks and does not require employees to take their vacation days consecutively.

Pacific Coast submitted as extrinsic evidence its Proposal Pricing Worksheet, which the Court may use to interpret the ambiguity.  *See Metro. Area Transit*, 463 F.3d at 1260; *see also* Compl. Ex. 4 (ECF 1-1).  The Worksheet clarifies that Pacific Coast's pricing was contingent upon 1,888 productive hours per FTE per year.  Pacific Coast clearly contemplated an average of 112 unproductive hours per FTE per year, calculated from the Wage Determination requirements.  FPS did not object to this pricing worksheet at the time, and performance proceeded for eight months without objection from FPS.  While FPS later required, over Pacific Coast's objection, 2,000 productive hours per FTE per year beginning in June 2013, FPS has also awarded all the available option years to Pacific Coast.  FPS has raised concerns regarding Pacific Coast's CPARs, but it has not invoked the Contract's default provisions.  Pacific Coast's interpretation of the Contract was reasonable.

FPS's argument for 2,000 productive hours per FTE per year is not consistent with either the required vacation time set out in the Wage Determination or the Contract's silence on replacement for employees absent less than two weeks.  FPS's interpretation of the contract reflects a change from FPS's initial interpretation, which accepted 1,888 productive hours per FTE per year.  FPS's interpretation of the Contract does not give meaning to all parts—it ignores the requirement for vacation time and imports the absence notification and replacement requirement to all absences, not just the absences of or exceeding two consecutive weeks expressly covered by the terms of the Contract.

Accordingly, Pacific Coast's motion for summary judgment is granted, and FPS's motion for summary judgment is denied as to interpretation of the Contract.

B.      **Pacific Coast Has Not Shown Entitlement to Reimbursement**

Pacific Coast alleges that FPS changed the contract by requiring replacement employees for absences of less than two consecutive weeks, as well as 2,000 hours per FTE per year, forcing Pacific Coast to provide more employees than the Contract required.[7] In espousing this theory, Pacific Coast argues that it is owed the difference between the productive hours it promised in its proposal and the productive hours FPS demanded. Pacific Coast buttresses that argument with two spreadsheets showing the cost increase between 1,888 productive hours and 2,000.

FPS argues that even if Pacific Coast's interpretation of the Contract is correct, Pacific Coast has not suffered a breach of contract because there were no damages. To support that argument, FPS points to Pacific Coast's failure to produce payroll records showing the hours worked by each FTE, under each CLIN, for the duration of the Contract; instead, Pacific Coast has provided two "case reports," untethered to its actual work under the Contract. Without this evidence, FPS contends, no reasonable jury could grant judgment for Pacific Coast, and summary judgment against Pacific Coast is appropriate.

The Court agrees with FPS. Pacific Coast has shown the math to support what it alleges it is entitled to receive, but has not met its burden of showing that it *actually incurred* those costs, as required, to receive an equitable adjustment—or restitution—as a remedy for a constructive change to the Contract. *See Miller Elevator*, 30 Fed. Cl. at 701 ("To prove the amount of an equitable adjustment, the burden of proof lies with the party who seeks the adjustment."). Courts are not permitted to award equitable adjustment when the plaintiff cannot prove it was harmed by the government's actions. *See Admiral Fin. Corp. v. United States*, 378 F.3d 1336, 1344 (Fed. Cir. 2004) (citing *Restatement of Restitution and Unjust Enrichment* § 37 and cmt. a (Tentative Draft No. 3 2004)). To that end, courts cannot award equitable adjustment when doing so would result in a windfall. *See id.* at 1345.

Here, Pacific Coast admits that it did not provide 2,000 productive hours per FTE per year. *See* Pl. Response (ECF 48) at 6 (Pacific Coast "is not claiming that the level of performance exceeded 1,888 productive hours per year, per CLIN."). Pacific Coast neither alleges an exact amount of "extra" productive hours provided to FPS, nor provides any evidence to show those hours were in fact incurred, such as timesheets, pay records, or any other proof. Further, Pacific Coast did not respond to FPS's discovery request for accounting records that would prove the amount to which Pacific Coast was entitled because Pacific Coast's accounting system could not produce such records.[8]

---

[7] FPS's cross-motion for summary judgment calculates that Pacific Coast claimed entitlement to 2,183 hours of productive time per FTE per year. Pacific Coast's papers do not claim an amount of entitlement.

[8] The Court recognizes the jury verdict method of calculating damages in "'extensive and complex contract cases'" in which "'the exact computation of damages may prove to be extremely difficult.'" *Miller Elevator*, 30 Fed. Cl. at 702 (quoting *Am. Line Builders, Inc. v. United States*, 26 Cl. Ct. 1155, 1181 (1992)). In such cases, "'[i]t is sufficient if the evidence adduced is sufficient to enable a court or jury to make a fair and reasonable approximation.'" *Id.*

Without evidence to support Pacific Coast's claim that it provided 2,000 productive hours per FTE per year, Pacific Coast has not met its burden to show that it is entitled to an equitable adjustment. Therefore, Pacific Coast's motion for summary judgment must be denied, and FPS's motion for summary judgment granted as to damages.

## IV.   CONCLUSION

Because the Contract is ambiguous but Pacific Coast failed to prove the elements of breach, the Court **GRANTS IN PART** and **DENIES IN PART** the plaintiff's Motion for Summary Judgment, and **GRANTS IN PART** and **DENIES IN PART** the defendant's Motion for Summary Judgment. The Court will enter an Order reflecting the conclusion of this Memorandum Opinion.

s/ Richard A. Hertling
**Richard A. Hertling**
**Judge**

---

Here, Pacific Coast had four CLINs and five total FTEs over four years of performance. These records are in no way "extensive and complex," and Pacific Coast has not provided evidence sufficient to enable the Court to "make a fair and reasonable approximation" of the damages. *Id.* Thus, even under a jury verdict method of calculating damages, Pacific Coast has failed to satisfy its burden.